**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION (at Louisville)**

| | | |
|---|---|---|
| **JOHN MILLET, III** | : | **Case No. 3:25-cv-00134-CRS** |
| **14815 Rising Star CT, #85** | : | |
| **Louisville, KY 40272** | : | |
| | : | |
|     **PLAINTIFF** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JAMES CAMERON WRIGHT** | : | |
| **820 New Glendale Road** | : | |
| **Elizabethtown, KY 42701** | : | |
|     *In His Individual Capacity* | : | |
| | : | |
| **AND** | : | |
| | : | |
| **JEREMY SMITH** | : | |
| **820 New Glendale Road** | : | |
| **Elizabethtown, KY 42701** | : | |
|     *In His Individual and Official Capacities* | : | |
| | : | |
| **AND** | : | |
| | : | |
| **MORRIS W. FARRIS** | : | |
| **820 New Glendale Road** | : | |
| **Elizabethtown, KY 42701** | : | |
|     *In His Individual and Official Capacities* | : | |
| | : | |
| **AND** | : | |
| | : | |
| **BRAD RILEY** | : | |
| **820 New Glendale Road** | : | |
| **Elizabethtown, KY 42701** | : | |
|     *In His Individual and Official Capacities* | : | |
| | : | |
| **AND** | : | |
| | : | |
| **CHRIS MCKEE** | : | |
| **820 New Glendale Road** | : | |
| **Elizabethtown, KY 42701** | : | |
|     *In His Individual and Official Capacities* | : | |
| | : | |
| | : | |

**AND**                                          :
                                                 :
**MATTHEW J. JOHNSON**                            :
**919 Versailles Road**                           :
**Frankfort, KY 40601**                           :
    *In His Individual and Official Capacities*  :
                                                 :
**AND**                                          :
**MICHAEL ROGERS**                                :
**919 Versailles Road**                           :
**Frankfort, KY 40601**                           :
    *In His Individual and Official Capacities*  :
                                                 :
**AND**                                          :
                                                 :
**CHAD WHITE**                                     :
**919 Versailles Road**                           :
**Frankfort, KY 40601**                           :
    *In His Individual and Official Capacities*  :
                                                 :
**AND**                                          :
                                                 :
**PHILLIP BURNETT, JR.**                          :
**919 Versailles Road**                           :
**Frankfort, KY 40601**                           :
    *In His Individual and Official Capacities*  :
                                                 :
    **DEFENDANTS**            :

## AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, WITH JURY DEMAND ENDORSED HEREON

Plaintiff John Millet, III, by and through Counsel, for his *Complaint for Damages, Declaratory and Injunctive Relief with Jury Demand Endorsed Hereon* (the "Complaint") against Defendant Cameron Wright in his official capacity and individual capacity, states and alleges as follows:

## INTRODUCTION

1.  This action involves the deprivation of Plaintiffs' Fourth and Fourteenth Amendment rights by the official and individual capacity Defendants named herein.  This case involved an

encounter and arrest of the Plaintiff by Defendant James Cameron Wright, who goes by

Cameron, on March 12, 2024.  It also involves the continuation of a disturbing pattern by

Defendant Wright, involving the excessive use of force, and the second incident in the last

five years that resulted in a federal civil rights lawsuit.  As a result of the gratuitous use of

force that Defendant Wright inflicted upon him, John Millet suffered significant injury.  This

action challenges, and seeks redress for, the Constitutional violations committed by

Defendant Cameron Wright. This suit seeks money damages against the individual capacity

Defendants, and injunctive and declaratory relief against the official capacity Defendants

under 42 U.S.C. § 1983, attorney fees under 42 U.S.C. § 1988, and under state law.

## **PARTIES**

2.  At all times relevant herein, Plaintiff is, and was a citizen and domiciliary of the

Commonwealth of Kentucky.

3.  At all relevant times herein, Defendant James Cameron Wright ("Wright"), was and is a

citizen and domiciliary of the Commonwealth of Kentucky.  He is also a member of Post 4,

Kentucky State Police ("KSP").  At all times relevant hereto, he was acting under color of

law, in connection with his position as a Trooper with the KSP.  He is sued solely in his

individual capacity for monetary damages.

4.  At all relevant times herein, Defendants Morris Farris ("Farris"), Chris McKee ("McKee")

and Brad Riley ("Riley") served as Lieutenants with Post 4, at the Kentucky State Police, and

were and are responsible for supervising Wright and other Troopers within that post.

Defendants Farris, McKee, and Riley are sued for supervisory liability under § 1983 in their

individual capacities only for monetary damages, and in their official capacities for

prospective declaratory and injunctive relief.  Farris, McKee, and Riley "implicitly

authorized, approved, or knowingly acquiesced in the unconstitutional conduct of" Wright complained of herein, and thus the incident with Mr. Millet was causally connected to this deliberate indifference, as set forth in clearly established law set forth in *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 789-790 (6th Cir. 2012).

5. At all relevant times herein, Defendant Jeremy Smith ("Smith") was the Post 4 Commander with the Kentucky State Police, and has served in that position since April 21, 2022.  He was the commander of Wright, and, as explained herein.  At all times relevant hereto, he was acting under color of law, in connection with his position as a Captain with the KSP and supervised Wright and other Troopers within that post.  Smith "implicitly authorized, approved, or  knowingly acquiesced in the unconstitutional conduct of" Wright complained of herein, and thus the incident with Mr. Millet was causally connected to this deliberate indifference, as set forth in clearly established law set forth in *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 789-790 (6th Cir. 2012).  Defendant Smith is sued for supervisory liability under § 1983 for monetary damages in his individual capacity, and in his official capacity for prospective injunctive and declaratory relief.

6. At all relevant times herein, Defendant Matthew Johnson ("Johnson") was the West Troop Commander, with the Kentucky State Police, who, among other things, supervised Post 4 of the Kentucky State Police.  At all times relevant hereto, he was acting under color of law, in connection with his position as a Major with the KSP.  Johnson "implicitly authorized, approved, or  knowingly acquiesced in the unconstitutional conduct of" Wright complained of herein, and thus the incident with Mr. Millet was causally connected to this deliberate indifference, as set forth in clearly established law set forth in *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 789-790 (6th Cir. 2012).  Defendant Johnson is sued for

supervisory liability under § 1983 for monetary damages in his individual capacity, and in his official capacity for prospective injunctive and declaratory relief.

7.  At all relevant times herein, Defendant Michael Rogers ("Rogers") was the Office of Operations Commander, with the Kentucky State Police, who, among other things, supervised West Troop and Post 4 of the Kentucky State Police. At all times relevant hereto, he was acting under color of law, in connection with his position as a Lt. Colonel with the KSP. Rogers "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of" Wright complained of herein, and thus the incident with Mr. Millet was causally connected to this deliberate indifference, as set forth in clearly established law set forth in *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 789-790 (6th Cir. 2012). Defendant Rogers is sued for supervisory liability under § 1983 for monetary damages in his individual capacity, and in his official capacity for prospective injunctive and declaratory relief.

8.  At all relevant times herein, Defendant Chad White ("White") was the Deputy Commissioner, with the Kentucky State Police, who, among other things, supervised Operations, West Troop, and Post 4 of the Kentucky State Police. At all times relevant hereto, he was acting under color of law, in connection with his position as a Colonel with the KSP. White "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of" Wright complained of herein, and thus the incident with Mr. Millet was causally connected to this deliberate indifference, as set forth in clearly established law set forth in *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 789-790 (6th Cir. 2012). Defendant White is sued for supervisory liability under § 1983 for monetary

damages in his individual capacity, and in his official capacity for prospective injunctive and declaratory relief.

9.   At all relevant times herein, Defendant Phillip Burnett ("Burnett") was the Commissioner, with the Kentucky State Police, who, among other things, supervised Operations, West Troop, and Post 4 of the Kentucky State Police.  At all times relevant hereto, he was acting under color of law, in connection with his position as a Colonel with the KSP.  White "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of" Wright complained of herein, and thus the incident with Mr. Millet was causally connected to this deliberate indifference, as set forth in clearly established law set forth in *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 789-790 (6th Cir. 2012).  Defendant Burnett is sued for supervisory liability under § 1983 for monetary damages in his individual capacity, and in his official capacity for prospective injunctive and declaratory relief.

## JURISDICTION AND VENUE

10.   Subject matter jurisdiction over the federal claims and causes of action asserted by Plaintiff in this action is conferred on this Court pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, 28 U.S.C. §1331, 28 U.S.C. § 1343, 28 U.S.C. §§ 2201 and 2202, and other applicable law.

11.   Subject matter jurisdiction over the state law claims brought against Defendants in their individual capacities is conferred on this Court pursuant to 28 U.S.C. § 1367, as well as diversity of citizenship under 28 USC § 1332.

12.   This Court has personal jurisdiction over Defendants because they are citizens of and reside in Kentucky.

13.   Venue in this District and division is proper, pursuant to 28 U.S.C. §1391 and other applicable law, because all of the deprivations of Plaintiff's Constitutional Rights occurred in

counties within this District, and future deprivations of his Constitutional Rights are threatened and likely to occur in this District.

## **FACTS COMMON TO ALL CLAIMS**

### **Background of Wright's repeated use of excessive force and perjury in a prior case before this Court**

#### The Justin Halcom Incident

14. On March 6, 2020, several Kentucky Troopers, including Wright, are involved in a chase of Justin Halcomb.  Halcomb ultimately stops his vehicle, steps out, and places his hands on his truck demonstrating compliance.

15. Wright then approached Halcomb, who was not then resisting arrest, and throws him to the ground, shoves his head into the asphalt, and repeatedly and gratuitously strikes him, as Mr. Halcomb is piled on by multiple officers, with Wright engaging in what has now become a pattern and practice of excessive force by Wright.

16. Defendants Johnson, Rogers, White, and Burnett were aware of the Halcomb incident, either at the time, or shortly thereafter, but signed off on and approved Wright's use of excessive force and elected not to take any meaningful corrective action.

17. Upon information and belief, Defendants Riley, McKee, Farris, and Smith were aware of the Halcomb incident at the earlier of assuming their respective positions, or shortly thereafter, were aware of Wright's use of excessive force and elected not to take any meaningful corrective action.

#### The Thomas Davis Incident

18. On April 2, 2020, Wright engaged in the apprehension of Thomas Davis.

19. Davis is stopped, and Wright then opened Davis' drivers door, immediately threw Davis to the ground, even though Davis was not actively resisting, and Wright then repeatedly and gratuitously struck him.

20. Defendants Johnson, Rogers, White, and Burnett were aware of the Halcomb incident, either at the time, or shortly thereafter, but signed off on and approved Wright's use of excessive force and elected not to take any meaningful corrective action.

21. Upon information and belief, Defendants Riley, McKee, Farris, and Smith were aware of the Davis incident at the earlier of assuming their respective positions, or shortly thereafter, were aware of Wright's use of excessive force and elected not to take any meaningful corrective action.

<u>The Alex Hornback Incident</u>

22. On or about April 9, 2020, at approximately 1930 hours, three Kentucky State Troopers, Defendants Thomas Czartorski ("Czartorski"), Wright, and Kevin Dreisbach ("Dreisbach"), proceeded to execute an arrest warrant of Alex Hornback ("Alex"), at the home owned by Kevin ("Kevin") and Sonia Hornback, where Alex was also residing, and located at 166 S. Cole Ridge Road, Sheperdsville, KY 40165.

23. That warrant execution began when the three troopers knocked on the door and Kevin Hornback answered; the officers indicated they wanted to speak to Alex.  Kevin asked the officers what they wanted Alex for.

24. Kevin asked whether they had a warrant, but they told him they would not tell him.

25. Wright and Czartorski entered the home, with Dreisbach rounding around the back, when Kevin Hornbach informed Wright and Czartorski he would take them downstairs to where Alex was.

26. Alex Hornback came out to see what the noise was. From that second onward, Alex did not resist, nor did he fail to comply with any commands issued by officers.

27. Czartorski told Alex to place his hands on the wall, and he immediately complied and did so.

28. Then Wright told Alex to place his hands behind his back, and, when he went to do so, Wright threw him to the ground, hit him in the neck at least once if not twice, put his knee on the back of his neck, and held him down with his knee on Alex's neck, partially blocking his airway.

29. Kevin ran upstairs to grab his phone to record the incident.

30. Sonya, Alex's mother, became upset, and questioned why the officers were beating him.

31. Czartorski, who was beating Alex Hornback, with the flashlight, then stood up, and threatened Sonia that he would shoot her with his taser if she did not "shut up."

32. The troopers then threatened Kevin Hornback with arrest for recording them, and demanded Kevin produce his drivers license so that they could arrest him for recording them.

33. When Kevin was not sure how to do so, Wright took the phone and deleted it.

34. In the context of that incident, Wright informed the Hornbacks that the Commissioner had his back, indicating that knowledge of Wright's illegality had reached the highest levels of the KSP, and they elected to permit him to continue his pattern and practice of illegal excessive force and constitutional violations.

35. A lawsuit was then filed in this court involving the arrest of Alex Hornback and captioned at Case No. 3:20-CV-703.

36. On January 18, 2021, Czartorski was deposed in the Hornback matter, and on January 22, 2021, Wright was deposed in the Hornback matter, with each giving false testimony in their depositions in the *Hornback* matter, testifying in 2021, that they used no force whatsoever in

9

effecting the arrest of Alex Hornback, and that they did not need to use any force, and both knowing that this was materially false testimony.

37. In August, 2022, Judge Jennings of this Court observed that "Not only does Plaintiffs' expert note inaccuracies in Wright and Czartoski's testimony, but their testimony contradicts the Basement Video." *Hornback v. Czartorski*, 2022 U.S. Dist. LEXIS 137779 (WDKY 2022).

38. In response to these judicial findings, which included false testimony under oath and violation of clearly established rights for excessive force by Wright, Farris, McKee, Riley, Smith, Johnson, Rogers, White, and Burnett, each aware of the occurrence in the Hornback basement, aware of the occurrence on the street where Wright indicated that the Commissioner had his back, and aware of the perjury of Wright, each with deliberate indifference, elected to take no meaningful action against Wright insofar as his misconduct for any incident of excessive force, for either Wright's perjury, or for the prior incidents of excessive force involving Wright.

39. Thus, Defendants Wright, Farris, McKee, Riley, Smith, Johnson, Rogers, White, and Burnett, "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of" including the ongoing pattern and practice of Wright complained of herein, and thus the incident with Mr. Millet was causally connected to this deliberate indifference, as set forth in clearly established law set forth in *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 789-790 (6th Cir. 2012).

## The March 12, 2024 incident that gives rise to this lawsuit

40. On or about March 12, 2024, Kentucky State Trooper James Cameron Wright, then on duty and in uniform with the Kentucky State Police, and in a marked cruiser, encountered Mr. Millet's vehicle in or near the West Point, Kentucky, city limits.

41. Most, if not all, of the interactions herein are captured on camera, which clearly depicts the interactions.  Citations to timestamps herein are from Wright's body worn camera, from the starting point of that footage at 0:00 (with the time of the start of that footage indicating it was 12:13:48).   Where Wright's dash camera reveals better footage, it is also referenced, with timestamps from the start of the dash camera footage.

42. Wright initiated a traffic stop for failure to give a proper signal.  Upon contact, he suspected Mr. Millet of alcohol intoxication, due to detecting an odor of alcoholic beverages, and the manner of Mr. Millet's speech, which Wright described as "thick."

43. Wright begins the interaction at 0:59 of his body worn camera asking Mr. Millet if he is lost, to which Mr. Millet responds "I believe so."  Wright then responds "You seem like you are pretty lost."

44. Wright then asks Mr. Millet to put the cigarette he was smoking out at 1:28 of his body worn camera, and Mr. Millet complies.

45. Wright then asks Mr. Millet for his drivers license and insurance, and Mr. Millet responds that he does not have insurance, and Mr. Millet tells Wright that he needs a break, all captured between 1:37 and 1:57 of Wright's body worn camera.

46. Mr. Millet then volunteers that he does not have insurance and his tags are expired, at approximately 2:00 of Wright's body worn camera.

47. At 2:15 of Wright's body worn camera, Wright asks Mr. Millet to turn his car off, and Mr. Millet complies.

48. At 2:17 of Wright's body worn camera, Wright asks Mr. Millet to step out of his vehicle and for Mr. Millet to talk to him.

49. At 2:19 of Wright's body worn camera, Wright opens the door to Mr. Millet's driver's side door, and Mr. Millet begins to step out.

50. At 2:23 of Wright's body worn camera, Wright yells for Mr. Millet not to reach for anything as Mr. Millet gently tosses an object that he had in his hands, on the passenger seat. Mr. Millet is seen raising his hands, and has his phone in his left arm.

51. At 2:24 of Wright's body worn camera, Wright grabs Mr. Millet's right arm.

52. At 2:27 of Wright's body worn camera, Wright again tells Mr. Millet to step out, even though Mr. Millet had already been doing so, with Wright having grabbed Mr. Millet to control him, and with Mr. Millet having his cellular phone in his left hand. Mr. Millet's hands are still raised to demonstrate compliance.

53. At 2:31 of Wright's body worn camera, and even though Mr. Millet did not resist Wright in any way, Wright throws Mr. Millet to the ground. This is also depicted in Wright's dash camera, at 2:32 of that footage, where Wright bear hugs Mr. Millet and throws him to the ground.

54. At 2:38 of Wright's body worn camera, Wright demands that Mr. Millet place his hands behind his back, which Mr. Millet immediately does and is seen doing at 2:40 of Wright's body worn camera.

55. At 2:42 of Wright's body worn camera, Wright yells for Mr. Millet to get on his belly (Mr. Millet's hands are still behind his back at this point in the footage).

56. Wright then yells again for Mr. Millet to get on his belly, and, less than second later, at 2:44 of the body worn camera footage, Wright deploys a taser.

57. Wright's dash camera footage reveals a second deployment of taser as a popping noise is heard at 2:44 for the first deployment and 2:51 of the dash camera footage for a second deployment of the taser.

58. Wright continues taser deployment for approximately ten seconds, with it ending at approximately the 2:55 mark of Wright's body worn camera footage.

59. After Wright ceases taser deployment, and Mr. Millet's twitching and involuntary muscle spasms from the taser deployment cease, Mr. Millet flips to his stomach with his hands behind his back at 3:02 of Wright's body worn camera footage.

60. At the 3:36 mark of Wright's body camera footage, Mr. Millet is handcuffed and pulled to his feet.

61. Immediately thereafter, at 3:42 of Wright's camera footage, Wright gratuitously throws Mr. Millet to the ground, injuring him. Mr. Millet complains and screams out due to severe shoulder pain.

62. At 8:03 of Wright's camera footage, Wright calls for EMS.

63. Mr. Millet is seen on camera being taken to Baptist Health hospital for treatment.

64. Mr. Millet was then released from the hospital more than an hour later, and booked.

65. Defendants Farris, McKee, Riley, Smith, Johnson, Rogers, White, and Burnett then undertook to review the use of force by Wright, and, continuing their pattern of deliberate indifference towards ongoing constitutional violations, deliberately decided not to take meaningful corrective action.

66. While Wright charged Mr. Millet with a number of offenses, including resisting arrest in Wright's pattern and practice of using criminal charges to attempt to cover up his unlawful constitutional violations, here to include excessive force, Mr. Millet plead to an open

container violation and a reduced charge on the driving under the influence charge, where it was stated on the record that there was no stipulation to probable cause for any resisting charge.

67. Upon information and belief, either Lieutenant Farris, McKee, or Riley was present at the scene, and was present in relation to the follow-on use of force investigation, and covered it up.

68. Further, Defendants Smith, Johnson, Rogers, White, and Burnett were each aware of the situation and use of force against Mr. Millet, as well as the pattern of misconduct with respect to Wright, but elected to take no meaningful action against Wright.

69. As a consequence of the excessive force inflicted upon him by Wright, Mr. Millet suffered significant injuries as documented in hospital and medical records, to include fracture of seven ribs, a dislocation to his left shoulder, and injuries from the deployment of tasers with two perforations to his skin.

70. Mr. Millet required treatment two days after the incident at Saint Mary Elizabeth, where he had to undergo a seven day hospital stay.

71. Because this is not the first time that James Cameron Wright has engaged in flagrant violations of citizens' rights to be free from excessive force (it is at least the fourth that we know of), and indeed, this involves a pattern and practice on the part of Wright and other Troopers to utilize excessive force and then have it covered up or ignored by KSP supervision, Plaintiff seeks declaratory and injunctive relief against Defendants Farris, McKee, Riley, Smith, Johnson, Rogers, White and Burnett, in their official capacities, on behalf of himself and others, to enjoin Defendants to institute appropriate internal

investigation procedures with respect to Fourth Amendment violations involving excessive force.

72. Furthermore, as a consequence and the proximate and actual cause of the foregoing and the actions of Defendants, in their individual capacities, Plaintiff has suffered various damages, including, without limitation, physical injury, pain and suffering, medical expenses, injury to his reputation, incurrence of charges and expenses and other damages, such as will be proven at trial, which exceeds $50,000.

## COUNT I – VIOLATION OF FOURTH, AND FOURTEENTH AMENDMENTS

73. Plaintiff hereby reincorporates the preceding paragraphs of his Complaint as if fully set forth herein.

74. Plaintiff is a citizen of the United States of America.

75. Plaintiff also has clearly established rights and protections under the Fourth and Fourteenth Amendments to the United States Constitution.

76. Defendants, using their offices and acting under color of state law, violated and are violating Plaintiffs' Fourth Amendment Rights.  Defendants thereby subjected themselves under 42 U.S.C. § 1983, to prospective injunctive relief, and to declaratory relief under 28 U.S.C. §§ 2201, *et seq*. in their official capacity, and the individual capacity Defendants subjected themselves to be liable for monetary damages sought herein.

77. Defendants, using their offices and acting under color of state law, violated and are violating Plaintiffs' Fourteenth Amendment Rights, which have deprived, are depriving, and will deprive Plaintiff of his rights to equal protection and due process, which rights are clearly established.  Defendants thereby subjected themselves under 42 U.S.C. § 1983, to prospective injunctive relief, and to declaratory relief under 28 U.S.C. §§ 2201, *et seq*., and

the individual capacity Defendants subjected themselves to be liable for monetary damages sought herein.

78. Defendants abused the authority of their offices and, while acting under color of law and with knowledge of Plaintiff's clearly established rights, used his office to violate Plaintiffs' Fourth and Fourteenth Amendment rights.

79. As for Wright, specifically, and without limitation to other authority, the Sixth Circuit has "held that 'the right to be free from physical force when one is not resisting the police is a clearly established right.'" *Goodwin v. City of Painesville*, 781 F.3d 314, 328 (6th Cir. 2015) (*quoting Wysong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008)). Moreover, courts in the Sixth Circuit have repeatedly held that the use of additional force on a suspect after he has been neutralized is unreasonable. *See, e.g., Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir. 2006); *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004) (citing cases); *see also Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002) ("[T]here was simply no governmental interest in continuing to beat [plaintiff] after he had been neutralized, nor could a reasonable officer have thought there was."). Citizens who no longer pose a safety risk to officers during an arrest have a right to be free from "gratuitous violence." *Shreve*, 453 F.3d at 688; *see also McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) ("[O]ur court has repeatedly found that a totally gratuitous blow with a policeman's nightstick may cross the constitutional line."). Furthermore, to the extent that a suspect merely fails to comply with a command, this is known as passive resistance under clearly established Sixth Circuit case law, and does not justify the use of force. *Goodwin*, 781 F.3d 314, 328, 323-324; *Eldridge v. City of Warren*, 533 F. App'x 529, 534-35 (6th Cir. 2013); *Shreve*, 453 F.3d at 687.

80. As for Defendants Farris, McKee, Riley, Smith, Johnson, Rogers, White, and Burnett, each was aware of the excessive force incidents in the Halcomb, Davis, and Hornback incidents, was aware of the Court's findings in *Czartorski*, 2022 U.S. Dist. LEXIS 137779, involving Wright's excessive force and perjury in that case, and elected and made the deliberate choice to do nothing about it, leaving Wright to continue his pattern and practice of ongoing constitutional violations. Moreover, each elected not to take meaningful corrective action following the incident with Mr. Millet, demonstrating this ongoing approval and authorization. Each thus "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of" Wright, and thus the incident with Mr. Millet was causally connected to this deliberate indifference, as set forth in clearly established law set forth in *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 789-790 (6th Cir. 2012).

81. Plaintiff further seeks declaratory and injunctive relief against Defendant Wright: (a) declaring that Defendant Wright violated his constitutional rights as set forth in this Complaint; and (b) enjoining future violations of Plaintiff's rights or the rights of others by Defendants.

82. Plaintiff further seeks his costs and reasonable attorney fees under 42 U.S.C. § 1988.

83. As against Defendants, Plaintiffs further state that they were the actors responsible for the constitutional violations complained of as for Wright, or for the supervisors/commanders (Farris, McKee, Riley, Smith, Johnson, Rogers, White, and Burnett), each "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of" Wright, and thus the incident with Mr. Millet was causally connected to this deliberate indifference, as set forth in clearly established law set forth in *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 789-790 (6th Cir. 2012). As such, Plaintiff seeks damages in an amount to be

17

determined at trial under 42 U.S.C. § 1983, for violations of his clearly established

constitutional rights as set forth herein.  The measure of such damages shall be proven at

trial, and exceed $50,000.00, exclusive of interest and costs.

84. Plaintiff further seeks punitive damages against Defendants Wright, Farris, McKee, Riley,

Smith, Johnson, Rogers, White, and Burnett, in their individual capacities, since the actions

complained of were motivated by evil motive or intent, and/or when it involves reckless or

callous indifference to the federally protected rights of Plaintiff.  Plaintiff demands judgment

on these punitive damages against Defendants, in their individual capacities, in an amount to

be determined at trial, but not less than $10,000.00, exclusive of interest and costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as prayed for, including:

A.  That this Court issue a declaration that the practices complained of herein, by Defendants were and are unconstitutional;

B.  That this Court issue an injunction enjoining further unconstitutional actions by Defendants in their official capacities;

C.  That Plaintiff be awarded money damages, including compensatory and punitive damages as to Defendants in their individual capacities, in an amount to be proven at trial, and exceeding $10,000.00, exclusive of interest and costs;

D.  That trial by jury be had on all issues so triable;

E.  That Plaintiff be awarded his costs in this action, including reasonable attorney fees under 42 U.S.C. § 1988; and

F.  Such other relief as this Court shall deem just and proper.

Respectfully submitted,

/s/ Christopher Wiest
Christopher Wiest (KBA 90725)
Chris Wiest, Atty at Law, PLLC
50 E. Rivercenter Blvd., Ste. 1280
Covington, KY 41011
513/257-1895 (v)
chris@cwiestlaw.com

_/s/_Zachary J. Smith _____
Zachary J. Smith (KBA 98886)
P.O. Box 75310
Fort Thomas, Kentucky 41075
859/429-8254
zjsmithlaw@protonmail.com

/s/Thomas Bruns
Thomas Bruns (0051212)
4555 Lake Forest Drive, Suite 330
Cincinnati, OH 45242
513/312-9890
tbruns@bcvalaw.com
**Attorneys for Plaintiff**

## JURY DEMAND

Pursuant to FRCP 38 and other applicable law, Plaintiff demands trial by jury on all causes so triable.

/s/ Christopher Wiest
Christopher Wiest (KBA 90725)

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon all Defendants by ordinary U.S. mail and arranged service by process server, this 6 day of March, 2025.

/s/ Christopher Wiest
Christopher Wiest (KBA 90725)