UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:25-CV-00134-CRS

JOHN MILLET, III                                                          PLAINTIFF

v.

JAMES CAMERON WRIGHT, *et al*                                       DEFENDANTS
   In his individual capacity

## MEMORANDUM OPINION AND ORDER

Plaintiff, John Millet, has brought this civil action pursuant to 42 U.S.C. § 1983. He alleges that defendant James Wright deprived him of his right to be free from excessive force. Wright, a Kentucky State Police trooper, arrested Plaintiff on March 12, 2024 in connection with a traffic stop. According to Plaintiff, because he only passively resisted arrest, Wright's use of force—throwing him to the ground and tasing him—was excessive. He has sued Wright in his individual capacity for monetary relief. Amended Complaint at ¶ 3, DN 4 at PageID# 41. Plaintiff has sued other Kentucky State Police ("KSP") officers in addition to Wright. Those KSP officers include Michael Rogers, Chad White and Phillip Burnett, Jr. Plaintiff has sued each of these defendants in his individual capacity and in his official capacity. *Id.* at ¶¶ 7-9, PageID# 43-44. Rogers, White and Burnett ("Defendants") have moved to dismiss.[1] Motion, DN 18. In lieu of responding to that Motion, Plaintiff has moved for leave to file a second amended complaint. DN 20. Defendants have objected to amendment. They maintain that amendment would be futile because the proposed second amended complaint could not survive a motion to dismiss. The Court agrees. For that reason, leave to amend will be denied.

---

[1] Several other KSP officers are named in the Amended Complaint and in the proposed second amended complaint, but none has moved to dismiss.

Next, the Court will grant Defendants' Motion to Dismiss the Amended Complaint (DN 18). The allegations in that pleading likewise fail to sufficiently plead claims against Defendants. That dismissal will be without prejudice except for Plaintiff's Fourteenth Amendment Claim. Plaintiff has waived that claim, so it will be dismissed with prejudice.

That brings the Court to the final pending motion: Defendants' Motion to Strike Plaintiff's Reply filed in support of his Motion to Amend (DN 31). Defendants assert that the Reply should be stricken because Plaintiff improperly presented new arguments to which Defendants did not have the chance to respond. For the same reason, Defendants also seek leave to file a surreply to the extent the Court denies their Motion to Strike. The Court will grant some relief to Defendants. While Plaintiff's Reply does contain new arguments, it is not entirely dedicated to new argument. It also contains arguments which do no more than rebut arguments made by Defendants in response to the Motion to Amend. For this reason, striking the Reply entirely would not be appropriate. However, to the extent that the Reply does contain new arguments, the Court need not and will not consider those new arguments. *Ryan v. Hazel Park*, 279 F. App'x 335, 339 (6th Cir. 2008) (issues raised for first time in reply are waived).

## **BACKGROUND**

The following facts are drawn from Plaintiff's proposed second amended complaint. On March 12, 2024, Trooper Wright pulled Plaintiff over because Plaintiff failed to use his turn signal. Proposed 2nd Amd. Compl. at ¶ 47. Trooper Wright smelled alcohol and noticed that Plaintiff's speech was "thick." *Id.* Thus, he suspected that Plaintiff was drunk. *Id.* Trooper Wright asked for Plaintiff's license and insurance. *Id.* at ¶ 50. Plaintiff admitted that he was not insured and admitted that his tags were expired. *Id.* at ¶ 51. Trooper Wright asked Plaintiff to exit his car and grabbed Plaintiff's right arm to control him. *Id.* at ¶ 57. Plaintiff's hands were in the air. *Id.* Nonetheless, Trooper Wright threw Plaintiff to the ground. *Id.* at ¶ 58. Trooper Wright ordered Plaintiff to put

his hands behind his back. *Id.* at ¶ 59. Trooper Wright then ordered Plaintiff to get on his belly. *Id.* at ¶ 60. Plaintiff apparently did not comply. Trooper Wright again ordered Plaintiff to get on his belly. *Id.* at ¶ 61. Less than a second later, Trooper Wright tased Plaintiff. *Id.* About eight minutes later, Trooper Wright tased Plaintiff again for about ten seconds. *Id.* at ¶¶ 62-63. Thereafter, Plaintiff rolled over onto his stomach, was handcuffed, was thrown to ground for a second time, and was arrested after he was released from the hospital where he had been taken for treatment. *Id.* at ¶¶ 64-66, 69. Plaintiff alleges that Wright's use of force—throwing him to the ground and tasing him—was excessive, subjecting him to a violation of his constitutional rights. *Id.* at ¶ 71. Thus, he has sued Trooper Wright for damages.

Plaintiff also alleges that defendants Rogers, White and Burnett are personally liable for Trooper Wright's conduct. Plaintiff has attempted to plead two sets of events to establish his claims against these defendants. Both sets of events are meant to show that Rogers, White and Burnett were on notice of a risk that Wright would use excessive force and did nothing about it. The first set of events describes four prior incidents specific to Wright. The second set of events is described as a cover up of a systemic excessive-force problem within the KSP. For the most part, Plaintiff has pleaded his allegations against Rogers, White and Burnett collectively and indiscriminately, frequently listing each of them with other supervisory defendants, and simply accusing the group of the same misconduct. As explained below, this style of collective pleading often leads to vague allegations that fail to plead facts as to each supervisory defendant's responsibilities and conduct, *i.e.* what they knew and what they had the power to do but failed to do. As such, a court is often left with the impression that the supervisory defendants are being sued simply because of the job they hold at the time the complaint is drafted.

3

Here, there are some exceptions to the collective style of pleading. They include paragraphs 7, 8 and 9 which fall under the heading "Parties." The wording of these three paragraphs is identical, except for each defendant's job title and rank. Paragraph 7 reads as follows:

> At all relevant times herein, Defendant Michael Rogers ("Rogers") was the Office of Operations Commander, with the Kentucky State Police, who, among other things, supervised West Troop and Post 4 of the Kentucky State Police.
>
> At all times relevant hereto, he was acting under color of law, in connection with his position as a Lt. Colonel with the KSP.
>
> Rogers "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of" Defendant Wright complained of herein, and thus the incident with Plaintiff was causally connected to this deliberate indifference, as set forth in clearly established law set forth in *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 789-790 (6th Cir. 2012).
>
> Rogers is sued for supervisory liability under § 1983 for monetary damages in his individual capacity, and in his official capacity for prospective injunctive and declaratory relief.

Proposed 2nd Amd. Compl., DN 20-1 at PageID# 137 (spacing added for ease of reference).

Paragraph 8 opens with this allegation:

> At all relevant times herein, Defendant Chad White ("White") was the Deputy Commissioner, with the Kentucky State Police, who, among other things, supervised Operations, West Troop, and Post 4 of the Kentucky State Police.

*Id.* The rest of Paragraph 8 is essentially identical to Paragraph 7, differing only with respect to referring to Deputy Commissioner White as a "Colonel" as opposed to a "Lt. Colonel" and using White's name to allege that he is being sued in his individual and official capacities. *Id.*

Paragraph 9 opens with this allegation:

> At all relevant times herein, Defendant Phillip Burnett ("Burnett") was the Commissioner, with the Kentucky State Police, who, among other things, supervised Operations, West Troop, and Post 4 of the Kentucky State Police.

*Id.* at PageID# 138. The remainder of Paragraph 9 is nearly identical to Paragraph 8. Plaintiff apparently used a cut-and-paste method, as Paragraph 9 pleads that "***White*** implicitly authorized, approved, or knowingly acquiesced in . . . ." *Id.* (emphasis added). Like Paragraphs 7 and 8,

4

Paragraph 9 alleges that Burnett is being sued in both his individual and official capacities. *Id.* These paragraphs do not plead when defendant Rogers became employed as "the Office of Operations Commander," do not plead when defendant White became employed as the "Deputy Commissioner," and do not plead when defendant Burnett became the "Commissioner." Nor do these paragraphs contain allegations as to these defendants' duties, aside from a blanket allegation that they "supervised operations." Nor do these paragraphs contain allegations as to the authority each of these defendants possessed with respect to his duties.

Next, the proposed second amended complaint describes four alleged excessive-force incidents in which Trooper Wright was involved and which preceded Plaintiff's encounter with Wright. *Id.* at ¶¶ 14-44, DN 20-1 at PageID# 139-43. With respect to each of these incidents, Plaintiff alleges that Wright used excessive force or suggests that he did. *Id.* at ¶¶ 15, 34, and 43. With respect to defendants Roger's, White's and Burnett's conduct regarding two of these incidents, Plaintiff makes the same allegation:

> Johnson, Rogers, White and Burnett were aware of the . . . incident, either at the time, or shortly thereafter, but signed off on and approved Defendant Wright's use of excessive force and elected not to take any meaningful action.

*Id.* at ¶¶ 16, 20.[2] Plaintiff omits this allegation for the third incident altogether, save for allegations in Paragraphs 40 and 73 generally alleging that Defendants were aware of the prior incidents or "pattern of misconduct." DN 20-1 at PageID# 143, 147. With respect to the fourth incident, Plaintiff similarly pleads that

> Defendant Wright, Farris, McKee, Riley, Smith, Johnson, Rogers, White and Burnett, each were aware of the occurrence . . . , were aware [that] . . . Wright stated that the Commissioner had his back, and were aware of . . . perjury by Defendant Wright, and each with deliberate indifference elected to take no meaningful action against Defendant Wright for any incident of excessive

---

[2] Again, Plaintiff's use of a cut-and-paste pleading method is evident. Paragraph 20 references "the Halcomb incident" but the paragraphs that precede it do not relate to that incident.

force, for his perjury, or for the prior incidents of excessive force involving Defendant Wright.

*Id.* at ¶ 40, DN 20-1 at PageID# 142-43. None of the paragraphs that pertain to the four incidents involving Wright pleads facts as to how either defendant Rogers, White, or Burnett learned about or was put on notice of any of the incidents of Wright's or any other involved trooper's conduct. None pleads any action taken or statement made by any of these defendants which suggests he knew about or had been put on notice of any of the alleged unlawful conduct.

Finally, the proposed second amended complaint pleads allegations described as a "cover up." *Id.*, DN 20-1 at PageID# 148. These allegations comprise 22 paragraphs, beginning with paragraph 77 and ending with paragraph 98. The allegations are voluminous and not all of them are pertinent to the Court's decision. For this reason, rather than delineating them here, the Court identifies them and discusses them below in connection with its analysis of their sufficiency.

## ANALYSIS

The Court begins with the order in which it must review the pending motions and the standards applicable to those motions. When both a motion to dismiss and a motion to amend are pending, a court must consider the motion to amend before considering the motion to dismiss. *Rice v. Karsch*, 154 F. App'x 454, 464 (6th Cir. 2005) (citing *Ellison v. Ford Motor Co.*, 847 F.2d 297, 300 (6th Cir. 1988)). Generally, leave to amend should be "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, leave need not be given if amendment would be futile. *Id.* Amendment is futile if a claim or claims would not survive a Rule 12(b)(6) motion to dismiss. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

On a Rule 12(b)(6) motion, two working principles underlie a court's review. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, unlike fact allegations, legal conclusions are not entitled to the assumption of truth. *Id.* Thus, a legal conclusion couched as a fact allegation need not be taken

6

as true. *Id.* Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)). Stated another way, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Such circumstances warrant dismissal because "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Twombly*, 550 U.S. at 556).

Plaintiff proposes to sue Rogers, White and Burnett pursuant to § 1983 on a theory of "supervisory liability." Proposed 2nd Amd. Compl. § ¶¶ 7, 8 & 9. "Supervisory liability" is a misnomer with respect to § 1983 claims. *Iqbal*, 566 U.S. at 677. Under § 1983, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* Stated another way, the mere fact that a defendant occupied a position of authority does not justify the imposition of § 1983 liability. *Id.* at 676 (doctrine of *respondeat superior* does not apply to § 1983 claims). Unless the supervisor, "either encouraged the specific incident of misconduct or in some other way directly participated in it," *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982), his "failure to supervise, control, or train" the offending subordinate official is not actionable. *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016). Accordingly, the mere failure to act even in the face of a pattern of misconduct does not suffice to establish liability under § 1983. *Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976); *Hays*, 668 F.2d at 873-74; *accord Peatross*, 818 F.3d at 241. There must be some "'active unconstitutional behavior'" on the part of the supervisor. *Peatross*, 818 F.2d at 241 (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

7

For courts within the Sixth Circuit, "active unconstitutional behavior" includes implicitly authorizing, approving or knowingly acquiescing in the unconstitutional conduct of the offending official. Doing so is considered to be either encouraging the specific incident of misconduct or directly participating in it in some way other than being physically present. *Id.* at 242. Additionally, there must be a causal connection between the supervisor's conduct and the violation alleged. Causation may be established by showing that a supervisor's execution of a job duty or his failure to do his job directly resulted in the unconstitutional conduct. *Id.* (citing *Hill v. Marshall*, 962 F.2d 1209 (6th Cir. 1992)). These standards presuppose that the supervisory official knew that a risk of unconstitutional conduct existed and that he possessed the authority to do something that would prevent that unlawful conduct.

## A. The Motion for Leave to File a Second Amended Complaint

### 1. The Proposed Allegations Against Rogers, White and Burnett

Plaintiff has attempted to plead two sets of events to show that defendants Rogers, White and Burnett were on notice that Trooper Wright posed a risk of using excessive force on members of the public. Both suffer from fatal infirmities. The first set of events consists of four incidents that took place prior to Plaintiff's March 12, 2024 encounter with Trooper Wright. Plaintiff has pleaded, collectively, that Rogers, White and Burnett "were aware" of these incidents. These allegations are conclusory. There are no pleaded facts as to how or when either Rogers, White, or Burnett became aware of the prior incidents. Nor has Plaintiff pleaded facts that connect any of these defendants to the dates on which these prior incidents took place. That is, the allegations do not show that Rogers held the job of "the Office of Operations Commander," or that White held the job of "Deputy Commissioner," or that Burnett held the job of "Commissioner" when these events took place. Pleading that each held his respective job "at all relevant times" does not suffice.

8

It is conclusory. Being conclusory, Plaintiff's allegations are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678.

As a result, the proposed second amended complaint does not set forth facts from which one can plausibly infer that either Rogers, White, or Burnett knew about or was on notice of the prior incidents. Nor does the proposed second amended complaint contain pleaded facts as to what duties and authority came with "the Office of Operations Commander," the "Deputy Commissioner," or the "Commissioner" at the time of these incidents. Thus, one cannot plausibly infer that any of these defendants (1) implicitly approved, authorized, or knowingly acquiesced in Trooper Wright's alleged use of excessive force on Plaintiff and/or (2) failed to do his job which resulted in Trooper Wright's unconstitutional conduct. *Peatross*, 818 F.3d at 242. Thus, the proposed second amended complaint fails to plausibly plead an entitlement to relief from either Rogers, White, or Burnett under § 1983 based on the four prior incidents it describes. *Iqbal*, 556 U.S. at 679; *Peatross*, 818 F.3d at 242.

The second set of pleaded events are a somewhat closer call. These allegations are contained in Paragraphs 77-98. They attempt to plead a cover up within the Kentucky State Police. There are two overriding infirmities in these allegations. First, the constitutional wrong for which Plaintiff seeks to hold Rogers, White and Burnett liable is excessive force. While the allegations in Paragraphs 77-98 reference use-of-force incidents, they do not plead that all these incidents involved excessive force. Paragraph 77 refers to "30 *serious* use of force incidents." Proposed 2nd Amd. Compl., DN 20-1 at PageID# 148 (emphasis added). Paragraphs 78, 79 and 82 refer to only to "use of force of incidents." *Id.* at PageID# 148-49. Paragraph 91 refers to "the use of *significant* force." *Id.* at PageID# 151 (emphasis added). There are no allegations of "*excessive* use of force" in these paragraphs. Second, there are no pleaded facts that connect either Rogers, White, or Burnett to the "excessive force incidents" that are referenced in different paragraphs. Taken

9

together, Paragraphs 80 and 81 allege that there were "hundreds of reported incidents of excessive force by Post 4 Troopers" and that "*KSP* would dispatch a sergeant" who completed a "form E-42" to cover up these incidents. *Id.* at PageID# 149 (emphasis added). Paragraph 83 faults a Sergeant Mabe (who is not a party to this action) for falsely accusing "more than two dozen people" of taking a "bladed aggressive stance" for the purpose of covering up the use of excessive force by Post 4 troopers. *Id.* Paragraph 84 alleges that from 2020 to 2025 "more than a thousand incidents" of excessive force were documented in E-42 forms.

That Plaintiff became aware of these thousands of E-42 forms which reported excessive force appears implausible given two other allegations. First, Plaintiff pleads that all the E-42 forms were destroyed: "Then the E-42 forms, regardless of whether excessive force was found, were routinely destroyed per KSP policy." *Id.* at ¶ 88, DN 20-1 at PageID# 150. Second, Plaintiff pleads that there was no other means by which to track use-of-force incidents (much less excessive-force incidents) because defendants "Johnson, Rogers, White and Burnett . . . elected not to implement IAPro software," acquired in 2022, that would have created a "permanent record" of incidents involving the use of force. *Id.* at ¶ 97, DN 20-1 at PageID# 152. Given the self-conflicting allegations as to the E-42 forms, even if the Court assumes that E-42 forms were, in general, forwarded to Rogers, White and Burnett, *id.* at ¶ 88, that allegation does not nudge Plaintiff's claims across the line from possible liability to plausible liability. The same is true for the allegation that these defendants did not implement purchased software that would track use-of-force incidents. As well, the pleaded time period is problematic. Plaintiff pleads that the alleged cover up spanned 2020 to 2025. Any events after March 12, 2024, the date on which Plaintiff was allegedly injured, could not have led to that injury. In sum, while a few of the coverup allegations present closer calls as to what Rogers, White and Burnett may have known and did, taken together, they are self-defeating.

10

The remaining allegations respecting the conduct of Rogers, White and Burnett also fail to plead facts that plausibly show an entitlement to relief. Paragraph 86 alleges that these defendants made routine personnel changes to prevent other "Troopers staffing internal affairs" from "discovering patterns of excessive force and misconduct that may make KSP look bad." *Id.* at PageID# 150. "Looking bad" is not unconstitutional conduct. Next, Plaintiff alleges that Rogers, White and Burnett," permitted Troopers to review body-camera footage so that they could "mold their statements" in E-42 forms to that footage. *Id.* at ¶ 87. Plaintiff has not pleaded a causal connection between creating such a consistency between recordings of events and Wright's use of excessive force on Plaintiff. Finally, Plaintiff has pleaded that

> It was KSP policy and practice, including within the OMB-4 policy governing use of force, to charge a victim of KSP's use of force with the criminal offense of resisting arrest, regardless of whether the person in fact resisted arrest . . . and the vast majority of these charges were ultimately dismissed as unsubstantiated, just as that charge against Plaintiff was dismissed.

*Id.* at ¶ 91. This allegation is also insufficient. There are no pleaded facts with respect to the content of the OMB-4 policy. There are no pleaded facts that establish how or when either defendant Rogers, White, or Burnett were put on notice of any such practice and no pleaded facts that any of their jobs made them responsible for promulgating policies or amending them.

Finally, the proposed second amended complaint contains several recitations of the elements of the claim and legal conclusions that are not entitled to the presumption of truth. Plaintiff repeatedly pleads that Rogers, White and Burnett

> "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of" Defendant Wright complained of herein, and thus the incident with Plaintiff was causally connected to this deliberate indifference, as set forth in clearly established law set forth in *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 789-790 (6th Cir. 2012).

Proposed 2nd Amd. Compl. at ¶ 7, 8, 9, 41, 106 & 110. Count One, the only count, consists almost entirely of conclusory allegations and recitations of case law. There are two exceptions. The first

is Paragraph 99 which incorporates all preceding paragraphs. In this manner, it includes some fact allegations. Paragraph 100 alleges that Plaintiff is a United States citizen. The rest of the allegations consist of conclusory allegations or recitations of the elements of a claim. *Id.* at ¶¶ 101-111. Indeed, Paragraph 105 is a summary of cases that address resisting arrest and use of force. Being conclusory, none of these allegations is entitled to a presumption of truth.

### 2. The Fourteenth Amendment Claim

The proposed second amended complaint asserts that Defendants violated Plaintiff's Fourteenth Amendment Rights. Proposed 2nd Amd. Compl. at ¶ 103, DN 20-1 at PageID# 153. Defendants assert that because Plaintiff was an arrestee and not a pretrial detainee at the time Wright allegedly used excessive force, Plaintiff's claim arises exclusively under the Fourth Amendment. Response, DN 23 at PageID# 190 (citing *Graham v. Connor*, 490 U.S. 386 (1989)). Plaintiff contends that this argument fails because he "is not bringing a stand-alone Fourteenth Amendment claim." Reply, DN 27 at PageID# 213. Plaintiff's contention is incredulous. It is belied by express allegations:

> Defendants . . . violated and are violating Plaintiffs' [sic] Fourteenth Amendment Rights, which have deprived, are depriving, and will deprive Plaintiff of his rights to equal protection and due process . . . .

Proposed 2nd Amd. Compl. at ¶ 103, DN 20-1 at PageID# 153. Even if the Court were to set aside the direct contradiction between Plaintiff's allegations and his argument, the Court would dismiss. Plaintiff has essentially conceded that the Fourteenth Amendment does not apply in his case. Moreover, Plaintiff has waived any independent cause of action under the Fourteenth Amendment by declaring that he is not proceeding upon such a claim and never meant to plead one. Given these circumstances, the Court will grant Defendants' motion to dismiss the Fourteenth Amendment claim. *Hamer v. Neighborhood Hous. Serv. of Chicago*, 583 U.S. 17, 20 n.1 (2017) ("waiver is the

'intentional relinquishment or abandonment of a known right.'") (quoting *U.S. v. Olano*, 507 U.S. 725, 733 (1993)).

### 3. The Official Capacity Claims

Relying on the same allegations, Plaintiff has sued defendants Rogers, White and Burnett in their official capacities as officers with the Kentucky State Police. With respect to state officials, such claims are an exception to a state's sovereign immunity embodied in the Eleventh Amendment. The exception was established by the Supreme Court's decision in *Ex Parte Young*, 209 U.S. 123 (1908). In that case, the Supreme Court held that state officials may be sued in their official capacities for prospective injunctive relief to stop ongoing violations of federal law. Thus, to determine whether a plaintiff's official-capacity claims fit within this exception, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in judgment)).

Plaintiff's claims do not satisfy that straightforward inquiry. The two sets of events on which Plaintiff relies for his claims do not allege on-going violations of federal law. The first set is based on incidents that took place in the past: Trooper Wright's conduct on March 12, 2024 when Plaintiff was injured and four incidents that took place prior to that date. The second set of events—the alleged coverup—spanned the years 2020 to 2025. There are no allegations that the alleged unconstitutional conduct is on-going.

### 4. Defendant White

In opposition to Plaintiff's claims, defendant White asserts that Plaintiff cannot show that his conduct led to Plaintiff's injury. As grounds, White points to two facts: (1) Plaintiff was allegedly subjected to excessive force on March 12, 2024 and (2) White did not become employed

by the Kentucky State Police until July 2, 2024. Thus, according to White, it was impossible for him to be on notice of any conduct that risked the use of excessive force against Plaintiff and impossible for White to have taken some action to prevent it. Thus, Plaintiff's claims against him are futile. To support his argument, White relies on a personnel record he attached to his Motion to Dismiss. Response, DN 23 at PageID# 197; *id.* at PageID# 189 (incorporating motion to dismiss); 07/02/24 Personnel Action Notification, DN 18-1 at PageID# 122.

Plaintiff argues that the Court may not consider White's personnel record because it is not admissible on a Rule 12(b)(6) motion, particularly given that it has not been authenticated. Reply, DN 27 at PageID# 223. It is true that on a Rule 12(b)(6) motion, a district court should limit its review to the pleaded allegations and exhibits attached to the complaint. *Blackwell v. Nocerini*, 123 F.4th 479 (6th Cir. 2024). There are exceptions. For example, when a document is referenced in the complaint and the legal sufficiency of a claim depends on its content, a district court may consider it on a motion to dismiss. *Hodges v. City of Grand Rapids*, 139 F.4th 495, 513 (6th Cir. 2025) (citing *Blackwell*, 123 F.4th 479). Such a document is "central" to the complaint because a claim's validity "rises or falls" with the content of the document. *Blackwell*, 123 F.4th at 487. White's personnel record shows that he was not employed by the KSP prior to July 2, 2024. Thus, White is correct that it supports the conclusion that he is not culpable for Plaintiff's injury which took place on March 12, 2024. But whether the Court may rely on that record now is unclear.

Contrary to White's argument, the document is not referred to in the proposed second amended complaint. Plaintiff's conclusory allegation that White was Deputy Commissioner "at all relevant times" does not change that fact. It is also true that White has not authenticated the record. Yet, Plaintiff does not dispute its authenticity. He merely notes White's failure to authenticate it. Reply, DN 27 at PageID# 223. Without more, the Court has no reason to doubt the authenticity of the personnel record, particularly given that defendant White's brief is subject to FED. R. CIV. P.

14

11(b) (by presenting motion to court, filer represents that fact contentions have evidentiary support). Nor does it appear that the parties have tried to resolve the dispute among themselves. If, as he contends, White was not employed by the KSP at any time before Plaintiff's injury, he could not have been on notice of an excessive force risk to Plaintiff. Nor could White have held a job that would have given him the power to prevent Plaintiff's alleged injury. Today, the Court is dismissing the claims against White on other grounds but is doing so without prejudice. As a result, the Court encourages the parties to resolve the dispute raised by White's personnel record, if possible, before presenting the Court with it again.

**B. The Motion to Dismiss the Amended Complaint**

The Amended Complaint relies on three of the four prior incidents involving Trooper Wright to establish the individual liability of defendants Rogers, White and Burnett. It contains no coverup allegations. As well, the allegations as to these incidents are the same allegations contained in the proposed second amended complaint. Thus, they fail for the same reasons. *See infra* at Section A.1. In short, the Amended Complaint does not set forth facts from which one can plausibly infer that either Rogers, White, or Burnett knew about or were on notice of these prior incidents. Nor does it contain pleaded facts as to what responsibilities and authority either "the Office of Operations Commander," the "Deputy Commissioner," or the "Commissioner" had at the time of these incidents. Thus, one cannot plausibly infer that any of these defendants (1) implicitly approved, authorized, or knowingly acquiesced in Trooper Wright's alleged use of excessive force on Plaintiff and/or (2) failed to do his job which resulted in Trooper Wright's unconstitutional conduct. *Peatross*, 818 F.3d at 242. Thus, the Amended Complaint fails to plausibly plead an entitlement to relief from either Rogers, White, or Burnett under § 1983 based on the three prior incidents it describes. *Iqbal*, 556 U.S. at 679; *Peatross*, 818 F.3d at 242.

The Amended Complaint also fails to plead official-capacity claims against Rogers, White and Burnett for the same reason that the proposed second amended complaint fails to do so. There are no allegations of on-going violations of federal law. *Verizon,* 535 U.S. 635. Thus, these claims will be dismissed. *Id.* Finally, Plaintiff has waived any Fourteenth Amendment claim, so it will be dismissed.

## C. Defendants' Motion to Strike

Defendants have moved to strike DN 27 which is Plaintiff's Reply in support of his motion to amend or, in the alternative, for leave to file a surreply. Defendants maintain that striking the brief is warranted for two reasons: (1) Plaintiff did not state the grounds supporting amendment in his Motion despite being required to do so and (2) Plaintiff waited to state his grounds until after Defendants had opposed amendment, raising new arguments and thereby prejudicing Defendants. Motion, DN 31, at PageID# 237-38. Generally, the Court agrees with these two assertions.

Plaintiff did not file a response to Defendants' Motion to Dismiss, forgoing any rebuttal to those arguments. Instead, Plaintiff moved for leave to amend. While Plaintiff included a memorandum of law to support his Motion to Amend, it contains no more than a recitation of the standards for amendment. It does not explain how the proposed amendments would cure the deficiencies raised by Defendants' Motion to Dismiss. Indeed, its content suggests that it is a cut-and-paste job. For the Memorandum states that "if Defendant [sic] wants more detail about the Plaintiff's sincerely held religious beliefs, the Plaintiff can readily supply them, and has done so via the tendered Second Amended Complaint." Motion, DN 20, at PageID # 129. The tendered second amended complaint says nothing about Plaintiff's religious beliefs.

Even so, with respect to the Reply, the assertion that it rests entirely on new argument is not accurate. The Reply also rebuts arguments made in Defendants' Response and it is appropriate to do so. Those arguments include the topics of qualified immunity, causation, whether Plaintiff

16

raised a Fourteenth Amendment claim and whether the Court may consider the personnel records Defendants tendered to support dismissal. *Id.* at PageID# 213-26. As well, those arguments have not prejudiced Defendants. The Court's decision does not rest on qualified immunity. To the extent dismissal is granted for failure to plead causation sufficiently, Defendants have prevailed. Finally, Plaintiff has waived any claim based on the Fourteenth Amendment.

That leaves Plaintiff's assertions and arguments about his fact allegations as pleaded in the second amended complaint. Reply, DN 27, at PageID# 208-213. The Court agrees that this section of Plaintiff's Reply raises new arguments that should have been raised in Plaintiff's initial motion to amend. It explains the grounds on which amendment is sought. Such contentions are absent from Plaintiff's Motion to Amend. By raising those arguments for the first time in a reply, Plaintiff has waived them. *Ryan v. Hazel Park*, 279 F. App'x 335, 339 (6th Cir. 2008) (issues raised for first time in reply are waived). For this reason, there is no need for a surreply.

### CONCLUSION

In moving to amend, Plaintiff proposes to add new grounds for finding Rogers, White and Burnett liable for violating his constitutional right to be free from excessive force. These allegations are meant to show that Rogers, White and Burnett were on notice of an excessive force risk in Trooper Wright and of a systemic excessive-force problem within the KSP, particularly within Post 4, and failed to act in time to prevent an excessive-force injury to Plaintiff. However, Plaintiff's allegations "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (cleaned up) (internal quotation marks omitted). This is true for both the individual-capacity and official-capacity claims against Rogers, White and Burnett. For this reason, they cannot withstand a motion to dismiss and amending to add them would be futile. Thus, leave to amend need not be granted. *Foman*, 371 U.S. at 182; *Riverview Health*, 601 F.3d at 512. Accordingly, Plaintiff's Motion to Amend Complaint **(DN 20)** is **DENIED**.

For like reasons, by separate order entered simultaneously herewith, Defendants' Motion to Dismiss **(DN 18)** will be granted. Plaintiff has waived any Fourteenth Amendment claim, so it will be dismissed with prejudice. The remaining claims will be dismissed without prejudice. The Amended Complaint fails to sufficiently plead those claims against defendants White, Rogers and Burnett.

Defendants' Motion to Strike **(DN 31)** is **DENIED**. Contrary to Defendants' argument, the Reply they seek to strike does not rest entirely on new argument. For this reason, striking that brief is inappropriate. At the same time, to the extent that the Reply does contain new argument, the Court has ignored those arguments in rendering its decision on the motion to amend, thereby affording Defendants appropriate relief and obviating the need for a surreply.

Finally, to the extent that Defendants have opposed amendment and sought dismissal on grounds which are not addressed by this Opinion, the Court finds it unnecessary to entertain those arguments at this juncture. The Court's declining to do so should not be interpreted by the parties as the expression of any opinion as to the merits of those arguments.

**IT IS SO ORDERED**.

March 30, 2026

Charles R. Simpson III, Senior Judge
United States District Court

18